**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FORREST SYRONEY, | Case No. 1:14-cv-359 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Forrest Syroney filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents six claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff initially applied For Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in December 2001, and, on July 31, 2003, Administrative Law Judge ("ALJ") Sarah J. Miller denied the applications upon finding Plaintiff was capable of performing a range of light work that allowed him to perform jobs existing in significant numbers in the national economy. (Tr. 95-104, 281). Thereafter, in October 2010, Plaintiff filed applications SSI and DIB alleging a disability onset date of November 16, 2008. (Tr. 246-58). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On

1

December 12, 2012, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 38-94).  At the hearing, the ALJ heard testimony from Plaintiff and Robert Breslin, an impartial vocational expert.  On January 13, 2013 ALJ Deborah Smith denied Plaintiff's applications in a written decision. (Tr. 9-37).

Plaintiff was born in 1957 and was 50 years old at the time of his alleged onset date of disability.  He has limited education and past relevant work as a quarry supervisor, carpenter, chop saw operator and pallet builder. He alleges disability based upon breathing problems, narcolepsy and headaches.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "narcolepsy, chronic obstructive pulmonary disease ("COPD") with asthma and emphysema, borderline intellectual functioning, personality disorder, and adjustment disorder." (Tr. 15).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all extertional levels with the following non-exertional limitations:

> He should avoid more than occasional exposure to dust, gasses, or fumes. He should never be exposed to extreme temperatures; and never be required to balance. He is limited to performing only simple to moderately complex tasks that do not involve more than minimal reading.

(Tr. 18).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform his past relevant work as a quarry supervisor as he

2

actually performed the job or as a pallet builder as generally and actually performed. (Tr. 29-30, 79-93). The ALJ also made an alternative finding, consistent with the VE's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 30-31, 79-93). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. (Tr. 31).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to apply *Drummond* and applicable agency regulations; 2) finding that Plaintiff's job as a quarry supervisor was past relevant work; 3) finding that Plaintiff could perform his past relevant as actually performed; 4) posing a hypothetical question to the VE that did not accurately portray Plaintiff's impairments; 5) finding that Plaintiff could perform jobs that existed in significant number in the national economy; and 6) finding that Plaintiff's subjective complaints were not entirely credible. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's first assignment of error to be well-taken and dispositive.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing

3

his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

4

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. See Combs v. Commissioner of Soc. Sec., 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Specific Errors

*1. Drummond*

Plaintiff contends that the ALJ erred, under *Drummond v. Comm'r. of Soc. Sec.,* 126 F.3d 837 (6th Cir.1997), by failing to accept ALJ Miller's prior determination that Plaintiff was capable of performing light work. The United States Court of Appeals for the Sixth Circuit held in *Drummond,* "the principles of *res judicata* can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842 (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.*

After *Drummond,* the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity and other

5

prior findings made as part of a sequential evaluation. The Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

*4 AR 98–4(6), 1998 WL 283902 at *3 (June 1, 1998). Thus, under *Drummond,* "the burden is on the Commissioner to prove changed circumstances and therefore escape the principles of *res judicata." Id.* at 843.

In regard to his prior application for benefits, ALJ Miller issued a decision on July 31, 2003, finding that Plaintiff was capable of performing light work with additional non-exertional limitations. (Tr. 83–96). ALJ Miller concluded that Plaintiff was unable to perform his past relevant work, but found there were other jobs available in significant numbers which he could perform. (Tr. 92).

The current ALJ, however, relied on new evidence after the July 2003 decision to reach his decision that Plaintiff's condition had changed, and therefore, he was not bound by the earlier ALJ's findings. (Tr. 25). *See also Drummond*, 126 F.3d at 842. In so concluding, the ALJ noted that at the time of hearing before ALJ Miller, Plaintiff reported bilateral wrist pain and grip problems and physical examination showed positive Tinel signs as well as diminished sensation. However, within the relevant period of Plaintiff's current application for disability, he has not received any further treatment for carpal tunnel syndrome and testing reveals normal grip strength and negative Tinel signs. (Tr.

6

25).  Further, although ALJ Miller limited Plaintiff to light work, new evidence reveals that Plaintiff was able to maintain employment at multiple jobs with extertional levels above light after the date of ALJ Miller's decision.

In light of this evidence, ALJ Smith determined that Plaintiff was capable of greater exertional activity following ALJ Miller's decision, and the medical evidence did not show significant worsening in his condition following the period in which he was doing heavier extertional work.  (Tr. 25).

With respect to his lungs, ALJ Smith noted that clinical findings and objective studies largely revealed no change in Plaintiff's condition or improvement. (Tr. 26-27, 469, 475, 495, 508, 510, 525, 566, 568, 572). CT imaging demonstrated mild abnormalities with no significant changes over time, and a four millimeter nodule remained stable. (Tr. 26, 468, 495, 498, 508, 566). Doctors recommended no treatment for the nodule, only follow up scans for monitoring, at first every six months, then every twelve. (Tr. 26, 468, 495, 498, 508, 566). In addition, pulmonary function testing indicated improvement. (Tr. 26, 393, 510, 568). Plaintiff also reported his medications were effective. (Tr. 474, 572).The ALJ concluded Plaintiff's "reported symptoms and clinical signs of COPD following the termination of his employment generally mirrored those documented while he was still working." (Tr. 22).

In light of the foregoing, ALJ Smith determined that Plaintiff has the physical RFC to perform work at all extertional levels.[1]  (Tr. 19)

Plaintiff argues, however, that this finding is not substantially supported by the evidence of record.  In this regard, Plaintiff asserts that there is no medical opinion or combination of medical or other expert opinions in the file that indicates Plaintiff has the residual functional capacity (RFC) as found by ALJ Smith. The undersigned agrees.

Notably, on April 4, 2011, State Agency physician, Lynne Torello MD, limited Claimant to only occasionally lifting and/or carrying 25 pounds, ...frequently 10 pounds with postural and environmental limitations. (Tr. 111-15). On June 23, 2011, Sarah Long MD, was even more restrictive, opining that Plaintiff could carry no more than 20 pounds

---

[1] CFR § 404.1567 provides that to determine the physical exertion requirements of work in the national economy, the Agency classifies jobs as sedentary, light, medium, heavy, and very heavy; each defined as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

(d) Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) Very heavy work. Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

8

occasionally with similar postural and environmental limitations. (Tr. 137-38). State Agency Dr. Elizabeth Das MD, found on March 1, 2010, that there was no medical source opinions that were significantly different from her findings .(Tr. 447) and was adopting ALJ Miller's physical RFC based on significant weight being given to the opinions of the consultative examiner. (Tr. 446).

Dr. Stephen B. Nuter on March 23, 2011, revealed "...mild dyspnea with mild exertion and there is no dyspnea when lying flat. Exertion caused increased coughing also. Auscultation of lungs reveal wheezes and there is decrease air movement." (Tr. 482). Dr. Nuter diagnosed asthma and emphysema, chronic cervical strain, and chest pain finding that Claimant's ability to perform work-related activities "...appears to be at least moderately impaired due to neck pain and shortness of breath and the objective findings described above." (Tr. 483).

The ALJ, however, placed only "some weight" on the opinions and assessments of the medical consultants in connection with the instant claim. (Tr. 28.) In so concluding the ALJ discounted the opinions of Dr. Nuter, who examined Plaintiff on only one occasion. (Tr. 27-28, 480-93). The ALJ found Dr. Nuter's opinion that Plaintiff had moderate physical limitations was not supported by Dr. Nuter's minimally abnormal examination findings and apparently was based on Plaintiff's subjective complaints. (Tr. 27-28, 480-93). The ALJ also discounted the findings of Dr. Long, noting that "she seems to have based some of her conclusions on the claimant's allegations of limited neck pain and Dr. Nuter's findings upon examination. With respect to Dr. Das, who reviewed the medical record and adopted the RFC findings of ALJ Miller for light work,

the ALJ stated that she "did not adopt this RFC based on the new and material evidence presented." (Tr. 28).

The Commissioner, however, argues that the responsibility for assessing a claimant's RFC rests with the ALJ. See 20 C.F.R. §§ 404.1546(c), 416.946(c). The assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on opinions from medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Requiring an ALJ's RFC finding to be based on the opinion of an acceptable medical source "would, in effect, confer upon the [medical source] the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Social Security Ruling (SSR) 96-5p, 61 Fed. Reg. 34471-34474, 1996 WL 374183 (1996). In this case, the Commissioner asserts that the ALJ properly discounted the medical opinions that included limitations in excess of those the ALJ found credible, and she properly performed her duty as trier of fact in determining Plaintiff's RFC. (Tr. 19-29).

The undersigned recognizes that the ALJ is not required to formulate her RFC finding based on opinions from medical sources, but instead is permitted to base it on all the relevant evidence in [the claimant's] case record" in accessing Plaintiff's functional limitations. However, assuming the ALJ properly relied on new and material evidence and properly discounted the opinion evidence of record, there must remain substantial evidence that Plaintiff is capable of performing work at all extertional levels. *See Johnson v. Colvin*, No. 1:12-CV-977, 2014 WL 144530, at \*5 (S.D. Ohio Jan. 14, 2014)

citing *Williams v. Astrue,* 2010 WL 503140 (E.D.Tenn.Feb.8, 2010)(so long as substantial evidence supports the current ALJ's conclusion that new and material evidence requires revision of the previous residual functional capacity the Court should affirm the ALJ's decision).

Here, at best, the record supports a finding for medium work. At the hearing, Plaintiff testified that he lifted no more than 20-50 pounds at the jobs he performed after ALJ Miller's decision. (Tr. 49-53). This testimony is consistent with light to medium work. As noted above, the ALJ found that Plaintiff could perform work at *all* extertional levels. There is no evidence in the record that Plaintiff is capable of performing heavy and very heavy work, which requires lifting more than 100 pounds.

The Commissioner asserts that the record provides new and material evidence that Plaintiff did not have exertional limitations. (Tr. 19-29). In particular, the ALJ noted that a consultative examiner, Olayinka Aina, M.D, M.P.H. examined Plaintiff in January 2010 and found no limitations on Plaintiff's ability to lift, pull, or push. (Tr. 23, 414). The Commissioner and the ALJ mischaracterize Dr. Aina's findings. Notably, upon examination, Dr. Aina stated:

> Based on my objective finding, although this patient looks like someone who can lift pull and push, to fully evaluate him I would strongly recommend him to have a Pulmonary Function Study

(Tr. 414).

Thus, Dr. Aina found only that Plaintiff may look "like someone who can lift pull and push" but needed more testing to fully evaluate him. *Id.* He did not conclude that Plaintiff had no exertional limitations.

11

In light of the foregoing, the undersigned finds that the ALJ's decision in this regard is not substantially supported and therefore cannot be affirmed. Accordingly, this matter should be remanded under sentence four[2] for further fact-finding to properly determine Plaintiff's functional limitations in order to determine the proper application of *Drummond*. In this regard, on remand, the ALJ may refer Plaintiff for a consultative psychological examination, and/or solicit other additional medical evidence if necessary, such as the testimony of a medical expert.

### 2. Plaintiff's remaining errors

Because the ALJ must reconsider the evidence of record in order to re-determine whether Plaintiff's impairments meet or equal any of the listed impairments, it is also appropriate to reevaluate Plaintiff's additional alleged errors of the ALJ. (*See* page 3). The ALJ should also closely reexamine the step-four finding that Plaintiff is capable of performing his past relevant work.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the

---

[2] Plaintiff also argues that this matter should be remanded under sentence six in order to consider a statement from a previous employer. Plaintiff, however, fails to include any evidence or argument in order to establish whether such evidence meets the conditions for remand under sentence six of 42 U.S.C. § 405(g).

12

Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Mr. Syroney DIB and/or SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation;

2. As no further matters remain pending for the Court's review, this case be **CLOSED.**

           */s Stephanie K. Bowman*
           Stephanie K. Bowman
           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

FORREST SYRONEY,

       Plaintiff,

  v.

CAROLYN COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:14-cv-359

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).